**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DILLON SEVERINO; | : | |
| | : | DKT No.: 3:22-cv-1529 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FERNANDO SPAGNOLA; in his | : | |
| official capacity only; NED LAMONT, | : | |
| in his official capacity only; JAMES | : | |
| ROVELLA, in his official capacity only; | : | |
| PATRICK GRIFFIN, in his official | : | |
| capacity only; MARGARET E. KELLY, | : | |
| in her official capacity only; DAVID | : | |
| R. APPLEGATE, in his official capacity | : | |
| only; JOSEPH T. CORRADINO, in his | : | |
| official capacity only; SHARMESE | : | |
| L. WALCOTT, in her official capacity | : | |
| only; DAVID R. SHANNON, in his | : | |
| official capacity only; MICHAEL A. | : | |
| GAILOR, in his official capacity only; | : | |
| CHRISTIAN WATSON, in his official | : | |
| capacity only; JOHN P. DOYLE, JR., | : | |
| in his official capacity only, PAUL J. | : | |
| NARDUCCI, in his official capacity only; | : | |
| PAUL J. FERENCEK, in his official | : | |
| capacity only; MATTHEW C. | : | |
| GEDANSKY, in his official capacity only, | : | |
| MAUREEN PLATT, in her official | : | |
| capacity only; ANNE F. MAHONEY, | : | |
| in her official capacity only; | : | |
| CAROLYN M. FUTTNER, in her | : | |
| official capacity only; CYNTHIA | : | |
| CONRAD, in her official capacity only; | : | |
| ANTHONY IACONIS, in his official | : | |
| capacity only; GUDRUN JOHNSON, | : | |
| in her official capacity only; STEPHEN | : | |
| SANETTI, in his official capacity only; | : | |
| CHRIS LEWIS, in his official capacity | : | |
| only; CARL ROSENSWEIG, in his | : | |
| official capacity only; | : | |
| | : | |
| Defendants. | : | DECEMBER 1, 2022 |

## VERIFIED COMPLAINT

1.      This is an action for declaratory and injunctive relief that challenges the constitutionality of Connecticut's pistol permit laws, which condition the exercise of a fundamental, enumerated constitutional right on government benevolence and invite abuses of government power such as the one that has befallen Plaintiff Dillon Severino. Connecticut's pistol permit laws cannot pass constitutional muster under the historical standard that the Supreme Court announced in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (Jun. 23, 2022), and the Second Amendment requires the Court to put a stop to Connecticut's treatment of the Second Amendment as a second-class right that Connecticut citizens only get to exercise if their government permits them to.

## PARTIES

2.      Plaintiff Dillon Severino is a United States and Connecticut citizen who maintains his permanent home in Waterbury, Connecticut

3.      The Defendant, Fernando Spagnola, is Chief of Police for the City of Waterbury, Connecticut. He is sued in his official capacity only.

4.      The Defendant, Ned Lamont, is the governor of Connecticut, and he is sued in his official capacity only. In his role as Connecticut governor, Lamont is constitutionally required to "take care that the laws be faithfully executed," including the laws complained of herein. Conn. Const., Art. IV, § 12.

5.      The Defendant, James Rovella, is the Commissioner of Connecticut's Department of Emergency Services and Public Protection (DESPP), and he is sued in his official capacity only. In his role as the Commissioner, Rovella reports to Lamont and

oversees the Connecticut State Police, which is responsible for investigating and initiating prosecutions under Connecticut law. *See* Conn. Gen. Stat. § 29-7. Additionally, DESPP serves as the issuing authority for Connecticut pistol permits. *See* Conn. Gen. Stat. § 29-28(b).

6.     The Defendant, Patrick J. Griffin, is Connecticut's Chief State's Attorney and is sued in his official capacity only. In his capacity as Chief State's Attorney and head of the Division of Criminal Justice, Defendant Griffin oversees all Connecticut prosecutors. Additionally, he wields personal power to sign warrants, charging documents, applications for grand jury investigations, and supervises all appellate, post-trial, and post-conviction proceedings for criminal matters in Connecticut. This authority extends to prosecuting individuals who violate Connecticut's pistol permit laws.

7.     The Defendant, Margaret E. Kelley, is Connecticut's State's Attorney for the Ansonia/Milford Judicial District and is sued in her official capacity only. As a Connecticut State's Attorney, she is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). Her responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

8.     The Defendant, David R. Applegate, is Connecticut's State's Attorney for the Danbury Judicial District and is sued in his official capacity only. As a Connecticut State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-

286(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

9.     The Defendant, Joseph T. Corradino, is Connecticut's State's Attorney for the Fairfield Judicial District and is sued in his official capacity only. As a Connecticut State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

10.     The Defendant, Sharmese L. Walcott, is Connecticut's State's Attorney for the Hartford Judicial District and is sued in her official capacity only. As a Connecticut State's Attorney, she is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). Her responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

11.     The Defendant, David R. Shannon, is Connecticut's State's Attorney for the Litchfield Judicial District and is sued in his official capacity only. As a Connecticut State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

12.     The Defendant, Michael A. Gailor, is Connecticut's State's Attorney for the Middlesex Judicial District and is sued in his official capacity only. As a Connecticut State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

13.     The Defendant, Christian Watson, is Connecticut's State's Attorney for the New Britain Judicial District and is sued in his official capacity only. As a Connecticut State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

14.     The Defendant, John P. Doyle, Jr., is Connecticut's State's Attorney for the New Haven Judicial District and is sued in his official capacity only. As a Connecticut State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

15.     The Defendant, Paul J. Narducci, is Connecticut's State's Attorney for the New London Judicial District and is sued in his official capacity only. As a Connecticut

State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

16.    The Defendant, Paul J. Ferencek, is Connecticut's State's Attorney for the Stamford Judicial District and is sued in his official capacity only. As a Connecticut State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

17.    The Defendant, Matthew C. Gedansky, is Connecticut's State's Attorney for the Tolland Judicial District and is sued in his official capacity only. As a Connecticut State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

18.    The Defendant, Maureen Platt, is Connecticut's State's Attorney for the Waterbury Judicial District and is sued in her official capacity only. As a Connecticut State's Attorney, she is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters

within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). Her responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

19.     The Defendant, Anne F. Mahoney, is Connecticut's State's Attorney for the Windham Judicial District and is sued in her official capacity only. As a Connecticut State's Attorney, she is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). Her responsibilities and authority include prosecuting individuals who violate Connecticut's pistol permit laws.

20.     The Defendant, Carolyn M. Futtner, is the acting Chairwoman and the Board Secretary of Connecticut's Board of Firearms Permit Examiners and is sued in her official capacity only. She was appointed to the Board by former Connecticut Governor Daniel Malloy pursuant to Conn. Gen. Stat. § 29-32b(a). As acting chairwoman and Board Secretary, she exercises significant control over the hearing of administrative appeals from denials of temporary state pistol permits among other things and the scheduling of those hearings among other things.

21.     The Defendant, Dr. Cynthia Conrad, is a member of Connecticut's Board of Firearms Permit Examiners and is sued in her official capacity only. She was statutorily nominated to the Board by the Connecticut Department of Mental Health and Addiction Services pursuant to Conn. Gen. Stat. § 29-32b(a). As a member of the Board, she and the other board members possess the authority to establish the procedures, including

scheduling procedures, for the hearing of administrative appeals from denials of temporary state pistol permits, and the scheduling of those hearings among other things.

22.     The Defendant, Anthony Iaconis, Esq., is a member of Connecticut's Board of Firearms Permit Examiners and is sued in his official capacity only. He was statutorily nominated to the Board by the Connecticut State Rifles and Revolvers Association pursuant to Conn. Gen. Stat. § 29-32b(a). As a member of the Board, he and the other board members possess the authority to establish the procedures, including scheduling procedures, for the hearing of administrative appeals from denials of temporary state pistol permits, and the scheduling of those hearings among other things.

23.     The Defendant, Gudrun Johnson, is a member of Connecticut's Board of Firearms Permit Examiners and is sued in her official capacity only. She was statutorily nominated to the Board by the Connecticut Department of Emergency Services and Public Protection pursuant to Conn. Gen. Stat. § 29-32b(a). As a member of the Board, she and the other board members possess the authority to establish the procedures, including scheduling procedures, for the hearing of administrative appeals from denials of temporary state pistol permits, and the scheduling of those hearings among other things.

24.     The Defendant, Stephen Sanetti, is a member of Connecticut's Board of Firearms Permit Examiners and is sued in his official capacity only. He was statutorily nominated to the Board by the Ye Connecticut Gun Guild pursuant to Conn. Gen. Stat. § 29-32b(a). As a member of the Board, he and the other board members possess the authority to establish the procedures, including scheduling procedures, for the hearing of

administrative appeals from denials of temporary state pistol permits, and the scheduling of those hearings among other things.

25.     The Defendant, Chris Lewis, is a member of Connecticut's Board of Firearms Permit Examiners and is sued in his official capacity only. He was statutorily nominated to the Board by the Connecticut Department of Energy and Environmental Protection pursuant to Conn. Gen. Stat. § 29-32b(a). As a member of the Board, he and the other board members possess the authority to establish the procedures, including scheduling procedures, for the hearing of administrative appeals from denials of temporary state pistol permits, and the scheduling of those hearings among other things.

26.     The Defendant, Carl Rosensweig, is Chief of Police for the Granby Police Department and a member of Connecticut's Board of Firearms Permit Examiners. He is sued in his official capacity only and only as it pertains to his membership on the Board of Firearms Permit Examiners. Chief Rosensweig was statutorily nominated to the Board by the Connecticut Police Chiefs Association pursuant to Conn. Gen. Stat. § 29-32b(a). As a member of the Board, he and the other board members possess the authority to establish the procedures, including scheduling procedures, for the hearing of administrative appeals from denials of temporary state pistol permits, and the scheduling of those hearings among other things.

## **JURISDICTION**

27.     The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, 2201, and § 1651 as well as 42 U.S.C. § 1983. Venue is appropriate under 28 U.S.C. § 1391 because all of the parties are domiciled in Connecticut and all of the factual events giving rise to the cause of action occurred in Connecticut.

## FACTUAL ALLEGATIONS

### *Connecticut's Pistol Permit Laws – A System Of Prohibition & Local "Discretion"*

28.     Connecticut prohibits people from carrying any pistol or revolver upon his or her person without a permit except when they are in their home or their place of business. *See* Conn. Gen. Stat. § 29-35(a). A violation of the prohibition is a class D felony that carries a mandatory minimum sentence of one year of incarceration unless a court determines that there are mitigating circumstances. *See* Conn. Gen. Stat. § 29-37(b). The maximum sentence is five years of incarceration. Conn. Gen. Stat. § 53a-35a(8).

29.     Connecticut also makes it an infraction punishable by a $35 fine for a Connecticut pistol permit holder to carry a pistol without carrying his permit with him. *See* Conn. Gen. Stat. § 29-35(b) and Conn. Gen. Stat. § 29-37(c).

30.     Connecticut prohibits the sale or delivery of a pistol or revolver to any person who does not hold a valid Connecticut pistol permit, a valid permit to sell pistols or revolvers, or a valid eligibility certificate for a pistol or revolver issued pursuant to Conn. Gen. Stat. § 29-36f. *See* Conn. Gen. Stat. § 29-33(b). It, however, makes limited exceptions for federal marshals, parole officers, and peace officers. *Id*. A violation of this prohibition is a Class C felony that carries a mandatory two-year minimum sentence of incarceration and a minimum fine of $5,000. *See* Conn. Gen. Stat. § 29-33(i). The maximum sentence is ten years of incarceration. Conn. Gen. Stat. § 53a-35a(7).

31.     For the average person, Connecticut's pistol permitting laws offer two options by which they can lawfully obtain a pistol or a revolver: the pistol permit and the eligibility certificate. The key difference between the two is that former permits the

average person to carry a pistol or revolver in public while the latter only allows him to purchase it.

32.     Connecticut employs a two-part pistol permitting system. Applicants must first apply to their local chief of police, resident state trooper or a designated state trooper, or a town official such as a first selectman for a temporary state pistol permit. Conn. Gen. Stat. § 29-28(b). In that application process, applicants must:

      a.  Provide proof that they have taken a pistol and revolver safety course; and

      b.  Demonstrate that they are not prohibited from possessing a firearm under all of the relevant requirements of 18 U.S.C. § 922 and Conn. Gen. Stat. § 29-28(b).

33.     Even if these requirements are met, these local officials, however, may not issue the temporary state pistol permit unless they find "that such applicant intends to make no use of any or revolver… other than a lawful use and that such person is a suitable person to receive such permit." Conn. Gen. Stat. § 29-28(b). There are no statutory guidelines for officials on how to assess either of these factors.

34.     If an applicant successfully meets these qualifications, the local officials issue a temporary state pistol permit that permits a person to carry, but not purchase, pistols or revolvers for a period of 60 days during which the applicant is required to appear at a Connecticut State Police location to receive their final state pistol permit. *Id*.

35.     As with any government process, Connecticut requires applicants to pay a $140 fee for their pistol permit application, plus a fingerprinting fee and whatever fee that the Federal Bureau of Investigation (FBI) charges for a national criminal history records

check. *See* Conn. Gen. Stat. § 29-30(a). It requires pistol permit recipients to renew their pistol permits every five years at the cost of seventy dollars. *Id*.

36.    After a person obtains their pistol permit, the Commissioner of the Department of Emergency Services and Public Protection retains the authority to revoke the person's pistol permit "upon the occurrence of any event which would have disqualified the holder from being issued the state permit or temporary state permit…," which includes a free-for-all determination that a person is no longer suitable to possess a pistol permit. *See* Conn. Gen. Stat. § 29-32(b).

37.    The second option – the eligibility certificate – follows very similar requirements. An applicant for an eligibility certificate must submit an application to the Commissioner of the Department of Emergency Services and Public Protection. *See* Conn. Gen. Stat. § 29-36g. From the date of the submission, the Commissioner has ninety days to "(A) approve the application and issue the eligibility certificate, (B) issue a temporary eligibility certificate, or (C) deny the application and notify the applicant of the reason for such denial in writing." *Id*. If a temporary certificate is issued while the Commissioner awaits the FBI's national criminal history records check report, the Commissioner has 60 days from the receipt of the report to approve or deny the application. *Id*.

38.    The eligibility requirements for the eligibility certificate are pretty much identical to the eligibility requirements for pistol permits with one important exception: Conn. Gen. Stat. § 29-36f does not permit the Commissioner to conduct a free-wheeling "suitability inquiry." Instead, it requires him to issue the certificate if the applicant satisfies all of the statutory requirements.

39.     Like the pistol permit, the eligibility certificate comes with fees: a $35 fee for the initial permit and a $35 renewal fee every five years. Conn. Gen. Stat. § 29-36h.

40.     Conn. Gen. Stat. § 29-36i permits the Commissioner to revoke a person's eligibility certificate for any reason that would have disqualified them from originally obtaining it. Conn. Gen. Stat. § 29-36i.

41.     If a person's application for either a pistol permit or an eligibility certificate is denied or their pistol permit or eligibility certificate is revoked, Conn. Gen. Stat. § 29-32b permits him to pursue an administrative appeal to the Board of Firearms Permit Examiners.

42.     The Board of Firearms Permit Examiners is composed of eight members appointed by Connecticut's governor and one who must be a retired Connecticut judge and appointed by the Connecticut's Chief Court Administrator. *See* Conn. Gen. Stat. § 29-32b(a). The Governor, however, does not enjoy unlimited discretion as to all eight appointments. Six of the appointments must be from the nominees submitted by various government agencies and interest groups, which are specifically named in the statute. Conn. Gen. Stat. § 29-32b(a).

43.     Administrative appeals are functionally ineffective at vindicating Second Amendment rights and checking local abuses of power. The Board of Firearms Permit Examiners suffers from an extreme backlog of cases, and an applicant who does not qualify for expedited consideration can expect to wait 12 months to 2 years for a hearing.

44.     The bottom line of this system is that a person cannot purchase a pistol or revolver in Connecticut without government permission. It also means that a person

cannot bear a pistol or a revolver outside of their home or place of business without government permission.

45.    A violation of these requirements saddles a person with a felony conviction, which categorically bars them from ever possessing firearms again under federal or state law.

### *Plaintiff Dillon Severino*

46.    Plaintiff Dillon Severino is a twenty-seven-year-old,African-American, Connecticut citizen and a current Connecticut Department of Corrections officer at Garner Correctional Institution – a level 4 high security correctional institution that holds inmates who have been assessed as having significant mental health issues. He does not bring this lawsuit in his capacity as a state employee, nor does it reflect in any way on the Connecticut Department of Corrections.

47.    In or around April 2022, Severino submitted an application for a temporary state pistol permit at the Waterbury Police Department. He complied with all requirements to submit his application: submitting to fingerprinting, completing a pistol and revolver safety course, and paying the appropriate fees.

48.    Severino meets all of the qualifications to be issued a Connecticut pistol permit.

49.    On September 21, 2022, Defendant Spagnola issued a written denial of Severino's pistol permit application, which expressly based the denial on his conclusion that Severino is not a suitable person to lawfully carry pistols or revolvers within the community. *See* **Exhibit A**.

50.    In support of his decision, Spagnola cited three items:

a. "For your underlying conduct in an incident in Naugatuck, CT on 6/19/2022 where you were driving a vehicle with a misuse of plates, engaged police in a pursuit, and were driving recklessly."

b. "For your underlying conduct in an incident in Waterbury, CT on 5/25/2016 where you were involved in a fight on Elmer Street."

c. "For your conduct during the pandemic on 2/12/2021 where you were identified as the business manager of a bar which was not following curfew and social distancing restrictions."

*See* **Exhibit A**.

51.    Spagnola, however, could not point to a single criminal conviction that Severino had incurred or another statutory disqualifier that disqualifies him from purchasing, keeping, and bearing a pistol or a revolver.

52.    Instead, Spagnola's treatment of these incidents is vague and inappropriate for purposes of Severino's pistol permit application.

53.    On or May 25, 2016, Severino was involved in an incident on Elmer Street in Waterbury. He, however, was the victim in that incident. What started as a verbal dispute turned violent. In the ensuing chaos, Severino was stabbed several times, and his assailant's father discharged a firearm twice in the incident to threaten him. Severino – unarmed in the incident – suffered a collapsed lung. The state never charged Severino for his role in that incident.

54.    With respect to the incident allegedly occurring during the COVID-19 pandemic on February 12, 2021, the first knowledge that Severino had of the incident was when Defendant Spagnola alleged that he was involved. He has never owned or

managed a bar – let alone done so during COVID-19. The state never charged Severino for his alleged involvement in that incident, and it appears to be a case of mistaken identity.

55.     With respect to the allegations pertaining to the June 19, 2022 incident, the Naugatuck Police Department did, indeed, arrest Severino on these allegations, but the state chose to drop the charges against him within months of him being charged. Severino was never convicted of a crime for these allegations. Even so, all of the crimes that Spagnola alleges that Severino committed were misdemeanors:

      a.  Misuse of plates is either an unclassified misdemeanor or an infraction under Conn. Gen. Stat. § 14-147.

      b.  Engaging police in pursuit is either a Class A misdemeanor or an infraction under Conn. Gen. Stat. § 14-223.

      c.  Reckless driving is an unclassified misdemeanor under Conn. Gen. Stat. § 14-222.

56.     Severino's complete lack of convictions for any of these incidents and their status as misdemeanors renders them irrelevant for purposes of his pistol permit analysis.

57.     Rendering Spagnola's determination even more unsustainable is that Severino reported his June 19, 2022 arrest to the Department of Corrections, which did not terminate his employment or impose adverse consequences on him.

58.     In sum, Severino is indisputably qualified to purchase, keep, and bear pistols and revolvers within the Second Amendment's protections.

59.     On November 8, 2022, Severino filed an administrative appeal of Defendant Spagnola's baseless denial of his pistol permit application pursuant to Conn. Gen. Stat. § 29-32b.

60.     On November 14, 2022, Defendant Futtner sent a letter advising him that his appeal had been processed and assigned him a tentative hearing date of May 22, 2025. *See* **Exhibit B.** The tentative hearing date is not definitive, and Severino could wait even longer for a hearing on whether the Defendants will permit him to exercise his Second Amendment rights. *Id.*

61.     At the very least, Severino will be forced to wait two and a half years to receive a hearing on whether he is a suitable person to obtain state permission to purchase, possess, and bear a pistol or revolver.

## COUNT ONE – CONNECTICUT'S PISTOL PERMITTING LAWS VIOLATE THE SECOND AND FOURTEENTH AMENDMENTS

62.     Paragraphs 1 through 61 are incorporated herein.

63.     The U.S. Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (Jun. 23, 2022) has completely reshaped Second Amendment analysis in the United States.

64.     Prior to *Bruen*, courts employed a combination of a malleable public-policy interest-balancing test and means-end scrutiny (e.g., strict scrutiny) to analyze Second Amendment claims. *See, e.g.*, *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2015).

65.     *Bruen* abolishes the quasi-public policy and scrutiny analyses completely. Its reshaping of the analysis starts and ends with two basic principles:

a. "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S.Ct. at 2126.

b. "[T]he government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*.

66.     The Second Amendment's plain text indisputably covers the conduct that Severino seeks to engage in: the purchase, keeping, and bearing of a pistol for personal defense and the defense of his homes.

67.     Under *Bruen*, the burden of proof now falls on the Defendants to show a historical analogue to their modern regulations that is both "well-established and representative." *Id*. at 2133. There are no such historical analogues that can save the statutory provisions at issue.

68.     In fact, the historical record reveals that the constitutional right to bear arms has never been conditioned on government permission to do so and that governments throughout history have compelled firearms possession.

69.     Additionally, the historical record reveals that firearms permitting regulations historically applied only to individuals – particularly African-Americans and Indians – who were not considered citizens entitled to the rights and protections of the Bill of Rights and contemporary state constitutional protections.

70.      Conn. Gen. Stat. §§ 29-35, 29-33, and 29-36f violate Severino's Second and Fourteenth Amendment rights by requiring him to obtain the Defendants' permission before he is allowed to purchase, keep, and bear pistols or revolvers, compelling him to pay for the Defendants' permission, requiring him to carry government permission with

him at all times while bearing pistols or revolvers in public, and imposing felony consequences if he does not comply with those provisions.

71.    In the alternative, Conn. Gen. Stat. § 29-35 violates Severino's Second and Fourteenth Amendment rights by permitting the Defendants to perform open-ended "suitability" analyses with no objective or constitutional criteria to constrain the analyses.

72.    The Defendants violated Severino's Second and Fourteenth Amendment rights by denying him a pistol permit on the basis of their own unproven allegations. Those allegations do not disqualify Severino from obtaining a pistol permit under the enumerated federal and state statutory requirements.

## <u>COUNT TWO – THE DEFENDANTS HAVE VIOLATED, AND ARE VIOLATING, SEVERINO'S RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT</u>

73.    Paragraphs 1 through 72 are incorporated herein.

74.    The Fourteenth Amendment prohibits the Defendants from depriving Severino of his right to liberty without the due process of law.

75.    The Defendants have violated Severino's liberty interest in purchasing, keeping, or bearing a pistol or revolver by massacring the presumption of innocence that due process affords him. They have functionally accused him of committing crimes that he has never been convicted for and that the Defendants themselves have even made the intentional and conscious decision to classify him as a victim in one instance and not to prosecute him in two other instances.

76.    Without giving Severino an opportunity to contest the allegations or making any effort to prove them in court, Defendant Spagnola – acting as the agent of the other Defendants in this action – appointed himself judge, jury, and executioner of Severino's constitutional rights and denied Severino's application for a pistol permit on the basis of

his own conclusion that Severino must be guilty by the nature of who made the allegations – law enforcement.

77.     The Defendants are now actively violating Severino's due process rights by failing to provide him with a meaningful opportunity to be heard in a meaningful manner at a meaningful time by forcing him to wait two and a half years to even receive a hearing – all while they are depriving him of a substantial liberty interest articulated in the Bill of Rights and Article I, § 15 of the Connecticut Constitution and which is older than the United States itself.

78.     The Defendants' delay is inexcusable and legally unjustifiable. Severino's case does not require significant evidence gathering, and the parties could easily complete evidence gathering in 90 days or less. The delay is directly attributable to how infrequently the Defendants meet to hear appeals and the backlog of cases that the State of Connecticut has created through by setting up a mockery of a quasi-judicial court that meets too infrequently to act as an effective check to Second Amendment violations committed by issuing authorities such as Defendant Spagnola.

### **PRAYER FOR RELIEF**

Wherefore, the Plaintiff seeks the following relief:

A.     A declaratory judgment that Conn. Gen. Stat. § 29-35, in its entirety, violates the Second and Fourteenth Amendments to the United States Constitution;

B.     A declaratory judgment that Conn. Gen. Stat. § 29-36f violates the Second and Fourteenth Amendments to the United States Constitution;

C.     A declaratory judgment that Conn. Gen. Stat. § 29-33(b) violates the Second and Fourteenth Amendments to the United States Constitution;

D.      Alternatively, a declaratory judgment that Conn. Gen. Stat. § 29-28's "suitability" requirement violates the Second and Fourteenth Amendments to the United States Constitution;

E.      A declaratory judgment that the Defendants have violated Dillon Severino's right to purchase, keep, and bear arms under the Second and Fourteenth Amendments to the United States Constitution;

F.      A declaratory judgement that the Defendants have violated, and are violating, Dillon Severino's due process rights under the Fourteenth Amendment to the United States Constitution;

G.      A permanent injunction barring the Defendants from enforcing Conn. Gen. Stat. § 29-35;

H.      A permanent injunction barring the Defendants from enforcing Conn. Gen. Stat. § 29-36f;

I.       A permanent injunction barring the Defendants from enforcing Conn. Gen. Stat. § 29-33(b);

J.      Alternatively, a permanent injunction barring the Defendants from Conn. Gen. Stat. § 29-28's "suitability" requirement;

K.      A permanent injunction prohibiting the Defendants from withholding Dillon Severino's Connecticut pistol permit in the absence of a timely and meaningful opportunity to be heard at a meaningful time in a meaningful manner regarding its denial;

L.      Costs and attorneys' fees;

M.      Any such other and further relief that the Court deems just and reasonable.

The Plaintiff,

By: <u>/s/ Cameron L. Atkinson /s/</u>
Cameron L. Atkinson, Esq.
(ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

## VERIFICATION OF DILLON SEVERINO

I, Dillon Severino, being duly sworn and deposed, hereby state under oath as follows:

1.     I am over 18 years of age, and I understand and believe in the obligations of an oath.

2.     I have reviewed the complaint in this matter, discussed it with my counsel, and I know and believe that all of the factual allegations contained herein are true and accurate.

_____
Dillon Severino

Subscribed and sworn to before me, this _____29th_____ day of _November_____, 2022

_____
Notary Public/ My Comm Exp 6/30/2024
Commissioner of the Superior Court