UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DILLON SEVERINO; | : | |
| | : | DKT No.: 3:22-cv-01529 (VAB) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FERNANDO SPAGNOLA; in his | : | |
| official capacity only; et al. | : | |
| | : | |
|     Defendants. | : | MAY 16, 2023 |

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Pursuant to Local Rule 7(d), the twenty-two State Defendants submit this Reply Memorandum of Law in response to Plaintiff's Memorandum of Law in Opposition to the State Defendants' pending Motion to Dismiss.[1]  *See* ECF Nos. 33 and 36.  The Defendants maintain the several grounds raised in their Memorandum of Law in Support of their Motion to Dismiss, see ECF No. 33-1, and do not intend to repeat each of those arguments here.  However, Defendants will reply to certain of Plaintiff's arguments because they fail to demonstrate affirmatively that the Court has jurisdiction to hear his claims.  *See, e.g., Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.")

---

[1] The twenty-two State Defendants are all sued in their official capacities only and include the following: James Rovella, the Commissioner of the Department of Emergency Services and Public Protection ("Commissioner Rovella"), Patrick J. Griffin, the Chief State's Attorney, each of the thirteen State's Attorneys (collectively the "State's Attorney Defendants"), and members of the Board of Firearms Permit Examiners ("BFPE Defendants").

1

## I. The Voluntary Cessation Exception to the Mootness Doctrine Does Not Apply.

Applying the voluntary cessation doctrine requires precisely identifying the mooting event, lest the exception swallow the rule. *See, e.g.*, *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 445 (2d Cir. 2021) ("[T]he event that brought about mootness here was not the Governor and Commissioner's 'voluntary cessation'; as explained below, it was the voluntary decision of the municipal police chiefs to resume fingerprinting, and the plaintiffs' withdrawal of the PI motion as against the police chiefs in response."). Here, the event that mooted Plaintiff's claims in the instant matter—that he was injured by Chief Spagnolo's initial denial of the pistol permit application on grounds of "suitability" or by the initial scheduling of his appeal before the BFPE—was the BFPE's final adjudication of Plaintiff's administrative appeal, not any other conduct described in Plaintiff's complaint.[2] That adjudication is not the type of conduct that falls within the "voluntary cessation" exception because it completely eradicated the effects of the alleged violation and there is no reasonable expectation this violation will recur to this Plaintiff. *See Taveras v. New York City*, 2023 U.S. Dist. Lexis 69420, at *21-25, 2023 WL 3026871 (S.D.N.Y. April 20, 2023) (issuance of rifle/shotgun license to plaintiff mooted claims that challenged licensing laws burdened his Second Amendment rights).

---

[2] However "voluntary" the BFPE's action to reschedule Plaintiff's appeal from May 2025 to January 2023 may have been, the act of rescheduling, in and of itself, did not moot Plaintiff's claims. Rather, the subsequent adjudication did. Thus, the voluntary cessation doctrine must be assessed in light of the final adjudication, not any prior events.

2

The only "ongoing violations" identified by Plaintiff to maintain his challenge to Conn. Gen. Stat. § 29-28 are the alleged harms suffered by those individuals whose BFPE appeals are still pending. However, Plaintiff offers no legal basis in support of his argument that non-specific harms to unidentified third parties are sufficient to show a continuing violation of *Plaintiff's* rights. Of course, there is none. Furthermore, despite Plaintiff's efforts to cast himself as a victim of his own successful administrative appeal to the BFPE, the voluntary cessation doctrine does not apply on these facts.

For instance, in *Almakalani v. McAleenan*, a district court, presented with a similar argument in the context of an immigration appeal, rejected the notion that adjudicating the administrative appeal did anything other than moot claims that certain individuals had been injured by the "unreasonable delay" of their immigration petitions. 527 F. Supp. 3d 205, 223-24 (E.D.N.Y. 2021). In *Almakalani*, the plaintiffs claimed that adjudication of their petitions to immigrate to the United States was being delayed due to "intentional and discriminatory practices." *Id.* at 213. However, while the lawsuit was ongoing, the majority of the petitions that had been subject to the alleged delays were adjudicated. *Id.* at 216. The defendants moved to dismiss the claims arising from the adjudicated petitions as moot. *Id.* at 222-23. The Court determined that the adjudication was not a voluntary cessation because it did not thwart the plaintiffs' ability to obtain relief, but rather provided Plaintiffs with the very relief they sought to compel through litigation. *Id.* at 223-24. Because the adjudication of plaintiffs' petitions was final and could not be resumed upon the

conclusion of this litigation the voluntary cessation exception to mootness was inapposite. *Id.*

Plaintiff cannot claim any ongoing injury or threat that the remaining Defendants could act on his pistol permit application again because the mooting event was not a "voluntary cessation" of allegedly illegal conduct. The reasoning in *Almakalani* applies with equal force here: the BFPE's adjudication of Plaintiff's claim provided him with the very relief he sought to compel through litigation. Plaintiff has his pistol permit and his alleged injuries caused by Chief Spagnolo's denial of the pistol permit application on grounds of "suitability" or by the initial scheduling of his appeal before the BFPE are not ongoing. Additionally, there is no reasonable expectation that the alleged violation will recur to Plaintiff because the adjudication is final and the only defendant who had the capacity to appeal the BFPE's decision, Chief Spagnolo, is no longer a party to this action. *See, e.g.*, *Taveras*, 2023 U.S. Dist. LEXIS 69420, at *23 (voluntary cessation doctrine did not apply where there was no reason to suspect that plaintiff would be injured again by denial of a rifle/shotgun license and "there [was] no indication that the [defendant] will arbitrarily revoke, suspend, or refuse to renew his license in the future"). Therefore, no exception to mootness is available.

## II. Plaintiff's Claims Based on Unalleged, Future Constitutional Violations Are Not Ripe.

Plaintiff's attempt to evade the ripeness problems in his challenges to Conn. Gen. Stat. §§ 29-33(b), 29-35, and 29-36f does no better. Ultimately, Plaintiff's claims boil down to a disagreement with the permitting requirements. However, disagreeing

with a statute, even one he believes to be unconstitutional, is not enough to establish standing to challenge that statute in court. *Carney v. Adams*, 141 S. Ct. 493, 499 (2020) ("[A] plaintiff cannot establish standing by asserting an abstract 'general interest common to all members of the public' . . . 'no matter how sincere' or 'deeply committed' a plaintiff is to vindicating that general interest on behalf of the public . . . .") (citations omitted).

First, the mere existence of those statutes and Plaintiff's argument that he may someday be obligated to observe them is not enough for his challenges to be ripe. In a recent decision from this district, Judge Williams dismissed claims challenging parts of Connecticut's pistol permitting regime as moot following the issuance of pistol permits to the plaintiffs. *Conn. Citizens Def. League, Inc. v. Thody*, 2023 U.S. Dist. LEXIS 52505, at *21-22, 2023 WL 2687446 (D. Conn. Mar. 28, 2023) (Williams, J.). Despite having been issued permits, those plaintiffs sought to continue their claims for permanent injunctive relief and declaratory judgment. *Id.*[3] The Court determined that being subjected to future delays *if* plaintiffs re-applied for a permit was not sufficient to maintain standing, explaining that "[b]ecause the individual plaintiffs have received their permits, they are no longer being deprived of a process under which [they] may timely obtain municipal firearms permits[.]" *Id.* at *22. In turn, the claim of future injuries was "too abstract for purposes of injunctive relief, which is designed to address actual and imminent injury to a plaintiff." *Id.*

---

[3] The CCDL plaintiffs' complaint in that matter included a challenge to § 29-35 and other permitting requirements, more broadly. *See Conn. Citizens Def. League, Inc. v. Thody*, 3:21-cv-1156, ECF No. 1, Prayer for Relief ¶¶ 7-9 (filed 8/30/21), attached as **Exhibit A**.

Furthermore, the fact that other individuals had still-pending applications could not support third-party standing. *Id.* at *23 ("Plaintiffs cannot use the delays faced by third-party members of CCDL to assert any claims against Defendants, including any request for permanent injunctive relief."). As in *Thody*, Plaintiff's claims that he may have to meet certain requirements *if* he decides to carry a pistol in public or re-apply for a permit in the future are too abstract to support injunctive relief.

Second, the "legal context" Plaintiff relies on in the opposition brief is just that, a recitation of certain laws governing Connecticut's pistol permitting regime. *See* ECF No. 36, p. 13; Pl's Am. Compl., Doc. 28, ¶¶ 26-36. He does not allege actions that he, as an individual, has actually taken in violation of the statutes, let alone any intent to do so. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (Plaintiff claiming pre-enforcement standing must allege intention to engage in proscribed conduct where the threat of future enforcement is "sufficiently imminent."). Those facts, not alleged in the Complaint, should not be credited or applied in his favor. *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 327 n.1 (S.D.N.Y. 2021) ("Because a plaintiff cannot raise allegations not raised in its complaint in a brief in opposition to a motion to dismiss, the Court does not take notice of these allegations"). Plaintiff's claims of future obligations or consequences described in his opposition brief are speculative.

Finally, the looser standards Plaintiff seeks to claim by invoking the prior restraint doctrine should not be available to him in this Second Amendment challenge. Plaintiff's characterization of Connecticut's pistol permitting system as a

"prior restraint" on the right to bear arms directly contradicts the Supreme Court's decision to leave in place the existing licensing regimes employed in 43 states, including Connecticut. See *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2161 (2022) (Kavanaugh, J., concurring) ("[T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense."). Courts have consistently held that the Second Amendment does not embrace the "prior restraint" doctrine, which derives from First Amendment jurisprudence. *See, e.g.*, *Kachalsky v. County of Westchester*, 701 F.3d 81, 92 (2d Cir. 2012) (declining to apply First Amendment prior restraint principles to Second Amendment context), overruled in part on other grounds by *N.Y. State Rifle & Pistol Assn. v. Bruen*, 142 S. Ct. 2111 (2022); *Sibley v. Watches*, 460 F. Supp. 3d 302, 313-14 (W.D.N.Y. 2020) (holding that plaintiff lacked standing to challenge state's firearms permitting laws and rejecting argument that firearm licensure laws were impermissible prior restraint on Second Amendment rights); *see also United States v. Focia*, 869 F.3d 1269, 1283 (11th Cir. 2017) (rejecting claim that federal statute was "an impermissible prior restraint in violation of the Second Amendment because it criminalizes dealing in firearms without a license," and collecting cases from the First, Second, Third, Fourth, and Seventh Circuits rejecting similar claims); *Berron v. Ill. Concealed Carry Licensing Review Bd.*, 825 F.3d 843, 847 (7th Cir. 2016) ("If the state may set substantive requirements for ownership, which *Heller* says it may, then it may use a licensing system to enforce them. . . . Courts of appeals uniformly hold that some kind of license may be required."); *Powell v. Tompkins*, 926 F. Supp.

2d 367, 379 (D. Mass. 2013) ("[T]he requirement of prior approval by a government officer, or a licensing system, does not by itself render [a firearms] statute unconstitutional on its face.") (internal quotation marks omitted), *aff'd*, 783 F.3d 332 (1st Cir. 2015). Even with the changes brought by *Bruen*, there is no reason to apply that First Amendment doctrine to relieve Plaintiff of his burden to show standing.

### III.   The Eleventh Amendment Bars Plaintiff's Claims.

Finally, Plaintiff's arguments against Defendants' Eleventh Amendment immunity from suit are largely conclusory. Although unclear, the only substantive contentions he appears to raise are that the voluntary cessation doctrine somehow satisfies the ongoing violation requirement of *Ex parte Young*, and that the State's Attorney Defendants or the BFPE have the capacity to enforce Connecticut's pistol permitting laws. However, it is incumbent upon Plaintiff to explain how the actions or general enforcement powers of *one* of the Defendants deprives *all* of the Defendants of Eleventh Amendment immunity, irrespective of their statutory roles within the pistol permitting laws.

The acts that Plaintiff claims constitute a "voluntary cessation" of the illegal conduct were taken by the BFPE, not any other defendant. Thus, without conceding that voluntary cessation applies to the acts of any Defendant for the purposes of assessing Eleventh Amendment immunity, Plaintiff cannot rely on that exception to challenge the immunity of Defendants besides the BFPE. For the reasons discussed previously, Commissioner Rovella and the State's Attorney Defendants are entitled to Eleventh Amendment immunity. *See* ECF No. 33-1, pp. 13-18.

As discussed above, the "voluntary cessation" doctrine does not apply to the BFPE actions here. Moreover, *Saba v. Cuomo*, relied upon by Plaintiff, does not support an exception to *Ex parte Young* on these facts because not only had the *Saba* Court already determined that the voluntary cessation doctrine applied in that matter, but the policy at issue was ongoing, with nothing to prevent the recurrence of the alleged constitutional violation as to that plaintiff. 535 F. Supp. 3d 282, 296 (S.D.N.Y. 2021) ("[T]he policy and practice that led to the alleged constitutional violation is still in place. DMV has not made any changes to its system."). Furthermore, there is no threat of future harm by the BFPE Defendants because Plaintiff has already obtained a pistol permit as a result of the BFPE's favorable adjudication. *Cf. Saba*, 535 F. Supp. 3d at 300 ("[A]lleged injuries stemming only from past conduct *with no plausible threat of future violations* . . . do not fall within the *Young* exception to Eleventh Amendment immunity." (Citation omitted.)).[4]

Additionally, apart from citing two criminal cases purportedly involving violations of Conn. Gen. Stat. § 29-35 being prosecuted by the offices of certain State's Attorney Defendants, Plaintiff does not otherwise address the Defendant's authority to implement the requested relief as to the pistol permitting regime. Nor does Plaintiff allege any set of facts that would make enforcement of the laws against him as an individual sufficiently imminent to support standing. Additionally, any argument that *potential, future* constitutional violations may happen are not ripe

---

[4] To the extent that Plaintiff alleges injuries from constitutional violations that occurred in the past, the Eleventh Amendment categorically bars such claims. *See, e.g., Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars retrospective relief in the form of declaration "that Connecticut had violated federal law in the past").

because they rest on hypothetical events. *See, e.g., Tesler v. Cacace*, 607 Fed. Appx. 87, 88 (2d Cir. 2015) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)), cert. denied, 577 U.S. 1066, rehearing denied, 577 U.S. 1208 (2016). For example, Plaintiff may not to renew his pistol permit in Connecticut, or may always possess it while carrying a pistol. Thus, regardless of the application of the mootness and ripeness doctrines, Plaintiff has not raised any persuasive argument that his claims are not barred by the Eleventh Amendment.

### IV. Conclusion

For the foregoing reasons, as well as those raised in the Motion to Dismiss and supporting memorandum of law, Plaintiff's Amended Complaint should be dismissed.

*For the State Defendants*
*James Rovella, et al.*

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Blake T. Sullivan*
Blake T. Sullivan (ct30289)
Thadius Bochain (ct31367)
Maura Murphy Osborne (ct19987)
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06141
Tel: (860) 808-5020
Fax : (860) 808-5385
blake.sullivan@ct.gov
thadius.bochain@ct.gov
maura.murphyosborne@ct.gov

## **CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by electronic mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Blake T. Sullivan /s/